Maria Crimi Speth, #012574
David S. Gingras, #021097
Laura A. Rogal, #025159
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| CERTAIN APPROVAL PROGRAMS, L.L.C.; and JACK STERNBERG, | Case No: CV08-1608-PHX-NVW |
| Plaintiffs, | |
| v. | **MOTION TO DISMISS** |
| XCENTRIC VENTURES, L.L.C.; EDWARD MAGEDSON; and JOHN or JANE DOE, | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Xcentric Ventures, L.L.C. and Ed Magedson hereby move this Court for an Order dismissing Plaintiffs' Sixth Cause of Action for "Misappropriation of Name of Likeness". Taking all allegations as true for the purposes of this motion, Plaintiffs' Sixth Cause of Action simply does not state a legally viable claim in light of the facts alleged. As such, this claim should be dismissed.

**I.  BACKGROUND**

This Court is familiar with the general history of this case, so only a short précis of facts relevant to this motion are presented. Of course, regardless of their accuracy, the facts alleged in the Complaint are taken as true for the purposes of this motion. *See Thompson v. Paul*, 547 F.3d 1055, 1064 (D.Ariz. 2008).

10297-33/DSG/DSG/709075_v1

This case arises from a single "report" posted on www.RipoffReport.com on August 31, 2007 by a non-party to this case. The text of this report is set forth in its entirety in ¶ 38 of Plaintiffs' First Amended Complaint ("FAC").

In short, the report criticizes Plaintiff Jack Sternberg ("Sternberg") and his business known as "Certain Approval Programs". Paraphrased simply, the report states that Mr. Sternberg cannot be trusted, that his program is illegal and does not work, that Mr. Sternberg was arrested for fraud, and that anyone considering doing business with Mr. Sternberg should use caution by "ask[ing] [him] to give them 5 references of people who are making so much money [using Sternberg's program]." FAC ¶ 38.

Mr. Sternberg contends that some parts of the report are false and defamatory. The specific portions claimed to be false are set forth in ¶ 51 of the First Amended Complaint and they need not be repeated here. However, Mr. Sternberg does not dispute that he was, in fact, arrested for fraud and in subsequent discovery he has admitted that he is, in fact, a convicted felon who served time in federal prison for, *inter alia*, mail fraud. As such, there is no allegation in the Complaint, and there is no dispute, that the portion of the report which states that Mr. Sternberg was "arrested for fraud" is completely true.

In addition, as a matter of law, parts of the report contain matters which are clearly the author's opinion such as, "He's not a person you can trust." However negative those statements may be, they are not actionable as defamation. For that reason, to the extent they constitute the author's opinions about Mr. Sternberg, these statements are protected by the First Amendment. These two facts—that the report contains: 1.) true statements and 2.) non-actionable opinions about Mr. Sternberg—are necessarily fatal to Mr. Sternberg's Sixth Cause of Action for "misappropriation" of his name/likeness.

II.   ARGUMENT

    a.   Standard For Rule 12(b)(6) Motion To Dismiss

Before addressing the merits, it is worth noting the correct standard for a Motion to Dismiss under Rule 12(b)(6) has recently changed. For more than 50 years, litigants routinely cited the U.S. Supreme Court's classic opinion in *Conley v. Gibson*, 335 U.S. 41

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

1  (1951) for the principle that, "a complaint should not be dismissed for failure to state a
2  claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of
3  his claim which would entitle him to relief."

4  Its nostalgic value aside, the quoted section of *Conley* was never particularly
5  helpful in explaining the correct standard to be applied to a Rule 12(b)(6) motion. For
6  that reason, this portion of *Conley* was abrogated in 2007 by the U.S. Supreme Court in a
7  strongly-worded opinion:

> We could go on, but there is no need to pile up further citations to show that *Conley's* "no set of facts" language has been questioned, criticized, and explained away long enough.  To be fair to the *Conley* Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief.  <u>But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement</u>.  <u>The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard</u>:  once a claim has been stated adequately, it may be supported by showing any set of facts <u>consistent with the allegations in the complaint</u>.

*Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007) (emphasis added). As the Court explained in *Twombly*, the applicable standard for a Motion to Dismiss is no longer focused on whether a plaintiff "can prove *no set of facts* …" to support his claim. Rather, as simply stated in the text of Rule 12(b)(6) itself, the Court should dismiss a Complaint (or claim) if the allegations <u>actually presented</u> by the plaintiff, assuming they are true, fail to state a viable claim. In other words, defendants are *not* required to prove a negative by showing that the plaintiff can prove no *other* hypothetical facts to support a claim. Rather, the moving party's only burden is to show that the facts <u>as actually alleged</u> in the Complaint fail state a claim. If this showing is made, the motion should be granted without considering the potential existence of other facts which are not set forth in the Complaint. As explained below, this showing has been made as to Plaintiffs' Sixth Cause of Action, and this claim should therefore be dismissed.

10297-33/DSG/DSG/709075_v1

**b. Background—The Common Law Tort of Misappropriation Of Name/Likeness**

As a starting point, it should be noted that Plaintiffs' Sixth Cause of Action appears to be based on common law. However, "[t]here is no federal general common law" *Martin ex rel. Heckman v. Midwest Exp. Holdings, Inc.*, 555 F.3d 806, __ (9th Cir. 2009) (quoting *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)), and as a federal action based in diversity, the substantive state law of Arizona applies to this case. *See In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837 (9th Cir. 2001) (observing, "federal courts sitting in diversity apply state substantive law…") (citing *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996)).

Thus, as a threshold mater, this Court must determine whether Arizona substantive law recognizes a claim for misappropriation of name/likeness. However, no Arizona State Court has ever recognized a cause of action for misappropriation of a plaintiff's name/likeness, and no Arizona statute creates any such tort.

As such, this Court must determine whether the Supreme Court of Arizona would recognize such a claim and, if so, whether the facts alleged in the Complaint would support that claim. *See Medical Lab Management Consultants v. American Broadcasting Companies*, 306 F.3d 806, 812 (9th Cir. 2002) (holding, "When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case.") (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 885 n. 7 (9th Cir. 2000)).

Although no Arizona state court case has ever addressed the issue, this Court is not without guidance. Several federal decisions in Arizona have concluded that Arizona courts would recognize such a claim. *See Lemon v. Harlem Globetrotters Inter., Inc.*, 437 F.Supp.2d 1089 (D.Ariz. 2006); *Pooley v. National Hole-In-One Ass'n.*, 89 F.Supp.2d 1108 (D.Ariz. 2000); *Roth v. Naturally Vitamin Supplements, Inc.*, 2006 WL 988118, *3+ (D.Ariz. 2006).

10297-33/DSG/DSG/709075_v1

In general, these cases explain that a common-law misappropriation claim has four basic elements:

1.) The defendant's use of the plaintiff's name or likeness,
2.) The appropriation of the plaintiff's name or likeness to the defendant's advantage,
3.) Lack of consent, and
4.) Resulting injury.

*Lemon*, 437 F.Supp.2d at 1100.  The cases also explain that as set forth in the Restatement of Torts, the misappropriation tort is actually very narrow and is subject to significant First Amendment limitations:

> The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

RESTATEMENT (SECOND) OF TORTS § 652C cmt. d (1977) (emphasis added).

Furthermore, Arizona cases have noted a broad exception as follows:

> There is a recognized exception to the right to publicity doctrine where the use of a person's identity is so "incidental" as to have no commercial value. Such "incidental uses" may include the use of a person's identity in "news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses."

*Roth*, 2006 WL 988118, *5 (emphasis added) (quoting *Pooley*, 89 F.Supp.2d at 1112). This exception permitting the use of a person's name in connection with public

5

commentary/criticism has, in fact, been incorporated by statute in places such as California. *See* Cal. Civ. Code § 3344(d) (stating, "a use of a name, voice, signature, photograph, or likeness <u>in connection with any news, public affairs, or sports broadcast or account, or any political campaign, shall not constitute a use for which consent is required</u> … .") (emphasis added).

With these standards in mind, Plaintiffs' Sixth Cause of Action should be dismissed because Plaintiffs are attempting to use the claim to prohibit exactly the kind of conduct which the Restatement and caselaw expressly allow—the incidental use of a name in the course of public commentary/criticism about the person mentioned. In reaching this conclusion, it is important to compare cases where courts have determined that an actionable misappropriation has occurred against cases where the claim was dismissed.

### c. Summary Of Cases Where Misappropriation Claim Held Valid

In a typical misappropriation case, the defendant takes the name or image of the plaintiff (usually a celebrity) without consent and uses it to advertise the defendant's products or service, thereby creating a false implication that the plaintiff has agreed to promote or endorse the defendant's business. Courts have routinely found these kinds of allegations will support a claim for misappropriation under Section 652C of the Restatement. *See generally White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992) (finding plaintiff Vanna White stated an actionable claim by alleging that defendant, a manufacturer of consumer electronics, misappropriated plaintiff's image by using her likeness without her consent in a commercial advertisement for its products); *see also Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992) (affirming jury verdict in favor of famous signer Tom Waits based on defendant's use of a "near perfect imitation" of plaintiff's voice in a commercial advertisement for defendant's products); *Midler v. Ford Motor Company*, 849 F.2d 460 (9th Cir. 1988) (plaintiff Bette Midler stated actionable misappropriation claim where defendant used a sound-alike singer's voice in a commercial promoting Ford automobiles); *Downing v. Abercrombie & Fitch*, 265 F.3d

6

994 (9th Cir. 2001) (famous surfer stated actionable misappropriation claim where popular clothing manufacturer Abercrombie & Fitch used the plaintiff's photo in a clothing catalog in such a manner that it appeared plaintiff was endorsing defendant's clothing line). In each of these cases, the unlawful conduct shares several similar points:

- Plaintiff was sufficiently famous that their name/likeness/voice had substantial commercial value when used to promote a product/service; and

- Defendant used plaintiff's image/name/voice to promote a specific product in such a way that it appeared the celebrity was endorsing the product; and

- Plaintiff's image was used in a manner that plaintiff would usually be paid for (but wasn't).

In each of the above cases, the defendant's conduct was actionable because the defendant took the name/image/likeness of the plaintiff (a celebrity) and used the "star power" of the plaintiff in order to advertise defendant's products without plaintiff's consent. In doing so, each defendant received substantial economic value by capitalizing on the plaintiff's fame without permission. This basic fact pattern is the classic form of misappropriation recognized by the Restatement; "The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose." RESTATEMENT (SECOND) OF TORTS § 652C cmt. b (1977).

Here, unlike any of the above cases, the Plaintiff is <u>not</u> complaining about the use of his celebrity status to promote any product or service offered by Defendants. Rather, the claim is that Defendants have misappropriated Plaintiff's name because a third party posted a negative report about Plaintiff which criticized Plaintiff and his business practices. In short, Plaintiff is attempting to use the misappropriation tort to restrict the "mere mention" of his name in commentary about him and his business. As explained below, this type of conduct is non-actionable as a matter of law.

7

10297-33/DSG/DSG/709075_v1

### d. Summary of Cases Where Misappropriation Claim Held <u>Not</u> Valid

Having reviewed cases where a viable misappropriation claim was properly stated, the next step is to consider cases where the courts determined that such a claim was *not* sufficiently alleged. A good example is *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895 (Tx.App. 2001). In that case, the defendant (a former employee of plaintiff) posted a negative message about plaintiff on an internet message board and signed the statement using plaintiff's business name, "ExpressOne". *Express One*, 53 S.W.3d at 897. Upon seeing the message, the plaintiff sued for, *inter alia*, misappropriation of its name.

The trial court granted summary judgment in favor of the defendant, and the Texas Court of Appeals *affirmed*, finding that even though the defendant had used plaintiff's name in an effort to smear the company, these allegations simply did not constitute actionable misappropriation:

> In this case, Express One produced no evidence that Steinbeck appropriated the name "Express One" for his own benefit because of any value associated with the name. <u>Express One made no showing that Steinbeck used the name because he wished to appropriate its commercial or reputational value</u>. Indeed, there is no evidence Steinbeck intended to receive any benefit at all as a result of his using the name. <u>The evidence produced by Express One simply implied that Steinbeck intended to impugn Express One's reputation, rather than appropriate it</u>. We conclude the trial court correctly granted summary judgment in favor of Steinbeck on Express One's claim for invasion of privacy by misappropriation.

*Id.* at 900 (emphasis added). In another case, *Barnhart v. Paisano Publications, LLC*, 457 F.Supp.2d 590 (D.Md. 2006), the United States District Court in Maryland found that the plaintiff failed to allege sufficient facts to state a misappropriation claim under Section 652C where the defendant published a photograph of the plaintiff lifting her shirt at an outdoor event. Even though the photo was published without the plaintiff's consent, the court found as a matter of law that the misappropriation tort was simply not applicable to these facts; "<u>The tort is intended to protect against a person using the identity of another to advertise his business or for other commercial purposes</u>. Thus, an appropriation claim

8

1 does not arise from incidental uses of a person's identity or likeness." *Barnhart*, 457
2 F.Supp.2d at 595 (emphasis added).

3 In yet another case, *Stanley v. General Media Comm., Inc*., 149 F.Supp.2d 701
4 (W.D.Ark. 2001), the plaintiffs were two female high school students whose names and
5 non-nude photographs were published in *Penthouse* magazine without their consent.
6 They sued the publisher of *Penthouse* alleging, *inter alia*, misappropriation of their names
7 and likeness under Section 652C of the Restatement.

8 The U.S. District Court granted summary judgment in favor of the defendant on all
9 claims, including the misappropriation claim, finding that the mere use of the plaintiffs'
10 names and faces in *Penthouse* magazine without their consent was not actionable: "'*the*
11 *defendant must have capitalized upon the likeness of that person in order to sell more*
12 *magazines or newspapers*.'  The tort of invasion of privacy-appropriation requires
13 *commercial* use of a person's name or likeness." *Stanley*, 149 F.Supp.2d at 706 (emphasis
14 in original) (quoting *Fredrickson v. Hustler Magazine*, 607 F.Supp. 1341, 1360 (N.D.Tex.
15 1985)) (citing *Olan Mills, Inc. of Texas v. Dodd*, 234 Ark. 495, 353 S.W.2d 22 (1962);
16 *Zacchini v. Scripps-Howard Broadcasting Co.*, 351 N.E.2d 454, 459 (1976), 433 U.S.
17 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977); *Ault v. Hustler Magazine, Inc.*, 860 F.2d 877,
18 883 (9th Cir. 1988)).

19 The District Court in *Stanley* found that merely publishing the plaintiffs' names
20 and faces in the defendant's magazine, even when the defendant intended to make money
21 from doing so, was not a commercial use giving rise to a misappropriation claim; "the
22 Court is confident that no reasonable jury could conclude that Penthouse magazine
23 intended or expected that patrons would buy the magazine on the basis of the photo at
24 issue.  Defendant General Media did not appropriate Plaintiffs' name or likeness for
25 commercial use." *Stanley*, 149 F.Supp.2d at 706.

26 The same result was also recognized by the U.S. District Court in *Chapman v.*
27 *Journal Concepts, Inc.*, 528 F.Supp.2d 1081, 1096 (D.Hawai'i 2007).  In *Chapman*, the
28 plaintiff (a famous surfer name Craig "Owl" Chapman) sued the publisher of a magazine

9

1 called *The Surfer's Journal* for, *inter alia*, misappropriation of his name/likeness after the
2 publication ran a somewhat negative story about Owl which featured his name and several
3 photographs.

4 The District Court granted summary judgment in favor of the defendant as to
5 Owl's misappropriation claim, finding that the tort simply did not apply to a defendant's
6 conduct in publishing a negative story about the plaintiff, even where the plaintiff was
7 famous and the defendant was a commercial entity seeking to make a profit:

> Liability under this legal theory is generally limited to unauthorized use in connection with the promotion or advertisement of a product or service and not, as is the case here, for use in a magazine story. This is true even if the article was arguably motivated by *The Surfer's Journal's* desire for profits or tangentially results in increased income … . The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness.

*Chapman*, 528 F.Supp.2d at 1096 (emphasis added) (internal citations omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 652C cmt. d) (citing *Daly v. Viacom, Inc.*, 238 F.Supp.2d 1118, 1122–23 (N.D.Cal. 2002)).

### e. Plaintiffs' Complaint Fails to State A Claim For Misappropriation

In light of the standards set forth above, it is apparent that Plaintiffs' misappropriation claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the facts set forth in the First Amended Complaint simply do not meet the criteria for such a claim. To review, Paragraph 38 of the Complaint alleges that on August 31, 2007, a third party posted a negative story about Mr. Sternberg and his business on www.RipoffReport.com.

The misappropriation claim is based solely on this publication and on the fact that Mr. Sternberg's name has been automatically indexed in "meta tags" which describe the contents of the report about Mr. Sternberg. Because the article has been indexed, people searching on Google for Mr. Sternberg's name might be directed, by Google, to the report about Mr. Sternberg on Ripoff Report.

10

This is simply not a cognizable misappropriation claim.  Other than the incidental use of Mr. Sternberg's name in the article about him, there is no allegation that Defendants have attempted to capitalize on Mr. Sternberg's "fame" in order to falsely imply that he has endorsed any product or service offered by Defendants.  There is no allegation that Defendants have used Mr. Sternberg's celebrity status in a commercial manner such as an advertisement or a marketing campaign.  On the contrary, "The evidence produced by [plaintiffs] simply implied that [defendants] intended to impugn [plaintiffs'] reputation, rather than appropriate it." *Express One*, 53 S.W.3d at 900.

In short, the use of a person's name in an article or online posting which criticizes the individual is simply not conduct proscribed by the misappropriation tort.  If the posting at issue contains false and defamatory statements, and assuming no other defense applies (i.e., truth), then Mr. Sternberg has a complete remedy vis-à-vis his defamation claim.

On the other hand, if the statements are true—such as the statement that Mr. Sternberg was arrested for fraud, or if the statements are merely the author's opinion such as the remark "He's not a person you can trust"—then Mr. Sternberg cannot use a misappropriation claim as a sword to prevent the public dissemination of such information.  If this Court allowed Plaintiffs to expand the misappropriation tort in this way, virtually all forms of news reporting and all forms of free speech on the Internet would immediately cease to exist because no one would be allowed to publish critical commentary about a person without the person's consent.  This is simply not the law.  CBS News does not require the consent of $50 billion Ponzi schemer Bernard Madoff in order to publish a story about him, nor does Ripoff Report require the consent of Mr. Sternberg to allow a third party to post a story about him.  The use of a plaintiff's identity in this way is not actionable where the publication relates to matters of the public interest, "which rests on the right of the public to know and the freedom of the press to tell it." *Downing*, 265 F.3d at 1001 (quoting *Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 793, 40 Cal.Rptr.2d 639 (1995)).

10297-33/DSG/DSG/709075_v1

1   Indeed, it is important to note that in the context of a misappropriation claim, <u>truth is not a defense</u>. As such, when Ford Motor Company used an imitation of Bette Midler's voice in an advertisement, the question of truth was never addressed because falsity of the statement(s) is not an element of the misappropriation claim. The tort is not based on the accuracy of the manner in which the celebrity's image is used; it is based on the fact that the celebrity has a right to decide which products to promote (or not to promote) and to collect a fee for the commercial use of the celebrity's image in such advertising.

This is simply not what Mr. Sternberg has alleged in his Complaint. Ripoff Report is not using Mr. Sternberg's name to promote any goods or services; the name is being used solely to criticize Mr. Sternberg. As explained above, the misappropriation tort does not apply at all to the incidental use of a person's name for purposes of criticism. Because this is all that the Complaint alleges, Mr. Sternberg's Sixth Cause of Action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### f.  Corporations Cannot Assert Misappropriation of Publicity Claims

In addition to the above, to the extent Mr. Sternberg is attempting to assert a misappropriation claim on behalf of his company, Certain Approval Programs, this claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because corporations cannot assert claims for misappropriation of name/likeness; "A corporation, partnership or unincorporated association has no personal right of privacy." RESTATEMENT (SECOND) OF TORTS § 652I, cmt. c.  As such, a corporation has "no cause of action for any of the four forms of invasion covered by §§ 652B to 652E." *Id*. This means that a corporation cannot assert a claim for misappropriation of its name under Section 652C. *See generally Felsher v. University of Evansville*, 755 N.E.2d 589 (Ind. 2001) (citing *Warner-Lambert Co. v. Execuquest Corp.*, 427 Mass. 46, 691 N.E.2d 545 (1998); *N.O.C., Inc. v. Schaefer*, 197 N.J.Super. 249, 484 A.2d 729, 730-31 (1984); *L. Cohen & Co. v. Dun & Bradstreet, Inc.*, 629 F.Supp. 1425, 1430 (D.Conn. 1986) ("The law of privacy is [ ] concerned with the reputational interests of individuals rather than the less substantial reputational interests of corporations.")

12

### III. CONCLUSION

For the above reasons, Defendants move the Court for an order dismissing Plaintiffs' Sixth Cause of Action pursuant to Fed. R. Civ. P. 12(b)(6).

DATED this 17th day of March 2009.

                                          **JABURG & WILK, P.C.**

                                        /s/ David S. Gingras
                                        Maria Crimi Speth
                                        David S. Gingras
                                        Laura Rogal
                                        Attorneys for Defendants

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

10297-33/DSG/DSG/709075_v1

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2009 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Kenton J Hutcherson
Mazin A. Sbaiti
(Admitted *Pro Hac Vice*)
Hutcherson Sbaiti LLP
3102 Oak Lawn Avenue, Suite 700
Dallas, TX 75219
Email: kjh@hutchersonlaw.com
mas@hutchersonlaw.com

Michael Kent Dana
Dana Law LLC
506 East Portland Street
Phoenix, AZ 85006
Email:  mdana@danalaw.net
Attorneys for Plaintiffs

With a COPY of the foregoing delivered to:

Honorable Neil Wake
United States District Court
District of Arizona

s/Debra Gower

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

14

10297-33/DSG/DSG/709075_v1