**HUTCHERSON SBAITI LLP**
3102 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
Telephone (214) 443-4200
Facsimile (214) 443-4210

Kenton J. Hutcherson  (Pro Hac Vice)
Mazin A. Sbaiti (Pro Hac Vice)

**DANA LAW LLC**
506 East Portland Street
Phoenix, Arizona 85004
Telephone: (602) 622-2308

Michael K. Dana (State Bar No. 019047)

# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| CERTAIN APPROVAL PROGRAMS, LLC and JACK STERNBERG,<br><br>Plaintiffs,<br><br>v.<br><br>XCENTRIC VENTURES, LLC, EDWARD MAGEDSON, and JOHN OR JANE DOE,<br><br>Defendants. | Case No:  2:08-cv-1608-PHX-NVW<br><br>**Plaintiffs' Opposition to Defendants Xcentric Ventures, LLC, & Edward Magedson's Motion to Dismiss**<br><br>**(Oral Argument Requested)** |

Plaintiffs Certain Approval Programs, LLC, and Jack Sternberg respectfully submit this Opposition to Defendants Xcentric Ventures, LLC, and Ed Magedson's Motion to Dismiss the First Amended Complaint.

**PRELIMINARY STATEMENT**

On March 9, 2009, this Court granted Plaintiffs' Motion to Amend the Complaint over Defendants' objection that the Amended Complaint was "futile" and did not state a claim for misappropriation of name. All of seven days later, Defendants Xcentric Ventures, LLC, and Ed Magedson filed this Motion to Dismiss alleging that the Amended Complaint does not state a claim for misappropriation of name. This motion is redundant. Defendants have not filed a motion for reconsideration, though; nor is it even

arguable that this Motion meets any of the standards for reconsideration. Instead, this Motion is part of a now familiar pattern of dilatory tactics Defendants use to stall litigation and smother the opposition in briefing.

Even if this Court decides to address the substance, the Motion is substantively deficient and should be dismissed on several grounds:

1) The Amended Complaint plainly meets the elements for misappropriation.

2) Under the Supreme Court's *Zacchini* decision, the first amendment does not shield Defendants from Plaintiffs' misappropriation claim as a matter of law.

3) Defendants have not cited a single case holding that using a plaintiffs' names to directly profit from defaming him is a mere "incidental use" of his name protected under the first amendment.

4) Defendants have no law supporting their first amendment defense, given the unique facts presented by the Internet generally, and by the Ripoff Report website and business model specifically.

5) Defendants have not shown from the allegations that free speech is likely to be chilled, given the special facts at issue here.

Moreover, Defendants cite cases upholding a claim for misappropriation where the plaintiff was famous and endorsing a product. Indeed, those instances justify the misappropriation claim. But nowhere in the case law or the Restatement does it say that these are the *only* instances where the cause of action lies.

For these reasons, the motion to dismiss should be denied.

## ARGUMENT

### I.  Defendants Have Not Given Any Reason For This Court To Disturb Its Prior Ruling On The Issue Of Sufficiency Of Allegations

Defendants' motion to dismiss is nothing but a recapitulation of their unsuccessful argument that amending the complaint would be "futile" for its failure to state a claim of misappropriation. This motion is thus more properly a motion for reconsideration.

2

Because this Court rejected Defendants' argument that the amendment was "futile,"[1] it has already determined that the Amended Complaint states a proper claim for misappropriation, and this ruling is now the law of the case.

The Supreme Court has held that it is "a fundamental precept of common-law adjudication that an issue, once determined by a competent court, is conclusive. . . when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[2]  This "fundamental precept," true for decisions handed down by the same, or higher court, "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues'."[3]

The issues decided need not be identical in order for the latter to be precluded.  In *Mann*,[4] this Court held that the law of the case prohibited its revisiting an issue that was already decided "by necessary implication in the previous disposition."  Similarly, in *Century 21*,[5] this court held that a dispositive ruling in a trademark infringement suit precluded allowing plaintiffs to add a claim for registration because, even though the latter had not been expressly decided, the former had been dismissed on elements that were common to both.

Here, Defendants effectively argued their motion to dismiss when they argued that the Amended Complaint was futile.  The standard for "futility" is the same as for a 12(b)(6) motion.[6]  The Amended Complaint's allegations are either sufficient to meet

---

[1] *See* Order [Docket No. 39] at 3-4; Defendants' Response to Plaintiffs Motion for Leave to Amend [Docket No. 33] at 5-6.
[2] *Arizona v. California*, 460 U.S. 605, 619 (1983).
[3] *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 816 (1988).
[4] *Mann v. GTCR Golder Rauner, L.L.C*., 483 F. Supp. 2d 864, 870 (D. Ariz. 2007).
[5] *Century 21 Real Estate LLC v. Century Ins. Group*, 2007 U.S. Dist. LEXIS 9720 *11-13 (D. Ariz., Feb. 8, 2007).
[6] *See id*.; *Miller v. Rykoff-Sexton, Inc*., 845 F.2d 209, 214 (9th Cir. 1988) (*citing* 3 J. Moore, *Moore's Federal Practice* para. 15.08[4] (2d ed. 1974) (proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6) of Fed. R. Civ. P.)).

this standard, or they are not—and this Court already held that they are. Therefore, when this Court granted leave to amend to add the misappropriation claim, it *necessarily* held that the proposed amendment stated a claim for misappropriation, and was capable of "withstanding a motion to dismiss."[7] Thus, under *Mann* and *Century 21*, Defendants' motion to dismiss is redundant because this Court has decided the issue already.

This Court, of course, has the power to revisit its own prior ruling before a higher court has addressed it. So, to that extent, Defendants' motion should have been styled a motion for reconsideration. "Motions for reconsideration are disfavored and appropriate only if the court is presented with newly discovered evidence, if there is an intervening change in controlling law, or if the court committed clear error."[8] Defendants fail to even argue, much less demonstrate, that one of the conditions for revisiting and "agitating" the prior ruling is present. Nor should Defendants be afforded a second bite at the apple when they *elected* not to raise these issues when they first had the chance to—"The failure to properly brief an issue does not warrant granting a motion to reconsider."[9]

This alone is sufficient basis to deny the motion to dismiss.

There is no excuse for Defendants filing this follow-on motion without even attempting to meet the requirements for reconsideration. The Ninth Circuit has found it within the trial court's discretion to sanction where there is a pattern of repeated or

---

[7] *Potter v. Eaton Corp.*, 1993 U.S. App. LEXIS 28960 (9th Cir., Oct. 28, 1993) ("If the proposed amended complaint cannot withstand a motion to dismiss, then the amendment should be denied as futile.").

[8] *Jones v. Schriro*, 2008 U.S. Dist. LEXIS 90129 (D. Ariz. Oct. 27, 2008) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (*per curiam*)).

[9] *Jahi Aminata Dumisani v. Arizona*, 2008 U.S. Dist. LEXIS 88457 (D. Ariz., Oct. 22, 2008); *see also Minidoka Irrigation Dist. v. DOI,* 406 F.3d 567, 573 (9th Cir. 2005) (refusing to allow new arguments not raised previously on same issue); *Motorola, Inc. v. J.B. Rodgers Mech. Contrs., Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003) ("No motion for reconsideration shall repeat in any manner any oral or written argument made in support of or in opposition to the original motion.").

4

excessive motions like this – it does not matter whether the motion on its face has an arguable basis.[10]

## II. The Amended Complaint States A Proper Claim For Misappropriation Of Plaintiffs' Names.

Defendants' contention that Plaintiffs have not stated a claim for misappropriation ignores the law, and never actually addresses Plaintiffs' allegations. The Restatement's standard for pleading a misappropriation of name claim is:

> One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy.[11]

Similarly, Defendants set forth these elements in their Motion: (1) The defendant's use of the plaintiff's name or likeness, (2) The appropriation of the plaintiff's name or likeness to the defendant's advantage, (3) Lack of consent, and (4) Resulting injury.[12]

Plaintiffs' allegations throughout the Amended Complaint sufficiently meet these requirements.[13] Defendants have made no argument that these allegations are, in themselves, insufficient to set forth a misappropriation claim.

Rather, the thrust of Defendants' argument appears to be that Defendants cannot be said to "capitalize" on Plaintiffs' names for a commercial purpose because Jack Sternberg is no Vanna White, Bette Midler, or Tom Waits. The law does not require you, however, to be a celebrity to assert a valid claim for misappropriation—the key issue is capitalization on the name for defendant's benefit.[14] Here, Defendants capitalize on Plaintiffs' names within the context of an Internet search.

---

[10] *See Aetna Life Ins. Co. v. Alla Medical Services*, Inc., 855 F.2d 1470, 1476 (9th Cir. Cal. 1988). *Sheets v. Yamaha Motor Corp.*, 891 F.2d 533, 538 (5th Cir. 1990).
[11] Rest. (2d) Torts § 652C.
[12] *See* Motion at 5 (*citing Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F. Supp. 2d 1089, 1100 (D. Ariz. 2006)).
[13] *See* Amended Complaint [Docket No. 40] at, *e.g.,* ¶¶ 15-23; ¶ 26; ¶ 34; ¶¶ 111-126.
[14] *See* Rest. (2d) Torts § 652C, *cmnt b* ("[The cause of action] applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit,

HUTCHERSON SBAITI LLP
3102 Oak Lawn Avenue, Suite 700
Dallas, Texas 75219
(214) 443-4200
www.HutchersonLaw.com

People search for "Jack Sternberg" because they either want to do business with him or take his seminar to learn what he teaches. When they do that, they are attesting to the "commercial value" of his name. Why would anyone search for him if his name had absolutely no commercial value? Why would the Ripoff Report website insist on getting the names if they were not useful to the Ripoff Report in promoting the web page? Combine this with the allegation that Defendants automatically appended "Rip-off Report:" in front of the names, it supports the allegation that Defendants are "using" and "appropriating" Plaintiffs' names.

Moreover, the allegation that one of the first results is a link to Defendants' website with the title "Rip-off Report: Jack Sternberg . . .Buyers First" shows that indeed Plaintiffs are being used *successfully* to draw people to the Ripoff Report website. When one of Plaintiffs' prospective clients clicks on this link to Defendants' website, Defendants have successfully "capitalized" on Plaintiffs' names – rather than selling more issues of a magazine, they have sold more visits to the website on the backs of Plaintiffs' notoriety.

Defendants reap a profit from this in several ways by catering to two sets of potential patrons:[15]

- They sell more banner advertising to advertisers by increasing traffic to the website;

- They offer and sell Magedson's book "Ripoff Revenge";

- They sell "pay per click" advertising, which currently features a real estate seminar seller, "John Beck's Free & Clear Real Estate System" which has been "Verified safe business by Ripoff Report";

---

even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one.").

[15] *Cf. Stanley v. General Media Comm., Inc.*, 149 F.Supp.2d 701 (W.D.Ark. 2001) cited in Motion at 9 for proposition that defendant would have capitalized on plaintiffs' name had expected patrons bought more magazines because of plaintiff's appearance in it.

6

- They offer and sell the "Corporate Advocacy Program" to *Jack Sternberg* or other similar victims offering to mitigate and ameliorate the negative impact of the defamation *which they solicit and refuse to take down.*

The last bullet is rather significant. As explained in Plaintiffs' First Amended Complaint, "Defendants' 'Corporate Advocacy Program' is nothing more than a scheme to ransom a person's good name back to them."[16]

Defendants never address any of these allegations or why they are sufficient.

### III. Defendants Are Nothing Like a Newspaper or a Public Watchdog That "Incidentally Uses" Plaintiffs' Names

Defendants futilely attempt to argue that the first amendment's "incidental use" exception bars Plaintiffs' misappropriation claim outright. But (1) this issue was already addressed in the last set of briefing,[17] and (2) Defendants do not even attempt to argue that this is appropriate for disposition at the pleadings stage. As the Supreme Court—in its only case discussing the cause of action—held in *Zacchini*,[18] the First Amendment does not automatically trump a misappropriation claim. Rather, the values of such rights should be balanced against those served by the first amendment.[19] Defendants' attempt to invoke the "incidental use" doctrine apart from the first amendment likewise fails because the incidental use exception is rooted in the first amendment—i.e., where there is no incidental use problem, there is no first amendment problem and vice versa.[20]

---

[16] *See* FAC at ¶ 123.

[17] *See* Def's Opposition to Motion for Leave to Amend [Docket No.33] at 6; Plaintiffs' Reply Brief at 7-8 [Docket No. 35].

[18] *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 578 (1977) ("We conclude that although the State of Ohio may as a matter of its own law privilege the press in the circumstances of this case [right of publicity claim], the First and Fourteenth Amendments do not require it to do so.").

[19] *See Id*. at 574-77.

[20] *Zacchini*, 433 U.S. at 577-80 (finding no first amendment problem in misappropriation action and rejected fair use exception on same grounds) ; *Elvis Presley Enters. v. Passport Video*, 349 F.3d 622, 626 (9th Cir. 2003) ("First Amendment concerns in copyright cases are subsumed within the fair use inquiry."); *Pooley v. National Hole-In-*

7

**1. Defendants Lack Any Legal Authority for their Position that the Misappropriation Claim Fails as a Matter of Law**

Here, Defendants cite no authority for, and make no argument as to, why the free speech concerns *in this case* outweigh the protection of Plaintiffs' names. The paucity of Defendants' legal and argumentative support goes even deeper: **Defendants have not cited a single case holding that using a plaintiff's name to directly profit from defaming him is a protected "incidental use" of his name entitled to first amendment protection**.

On the other hand, it is black letter Supreme Court law that falsehood is <u>not</u> protected First Amendment speech.[21] It thus stands to reason that using another's name to profit from false defamatory speech is likewise not protected misappropriation. Other plaintiffs routinely allege misappropriation claims in conjunction with their defamation claims, and no court has dispensed with any of those claims on "incidental use" or first amendment grounds.[22]

Defendants' claim on page 2 that "some sentences" in the body of the posting are true, lacks any legal authority for the conclusion that this immunizes them from a misappropriation claim. And because Plaintiffs have alleged the falsity of the title—of greatest concern—and that the main thrust of the posting as a whole, this is sufficient to support the claim as described above. These are jury questions which are otherwise irrelevant to the *misappropriation* claim. And Defendants' position that Plaintiffs' own

---

*One Ass'n*, 89 F.Supp.2d 1108, 1112 (D. Ariz. 2000) (no first amendment problem if fair exception does not apply).
[21] *See Gertz v. Robert Welch, Inc.* 418 U.S. 323, 340 (1974); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942).
[22] *Compare, e.g., Downing v. Abercrombie & Fitch*, 265 F.3d 994, 999 (9th Cir. 2001) (reversing summary judgment and sending, inter alia, misappropriation of name claims to trial, holding that failure to prove injury justified summary judgment of defamation claim); *Moore v. Big Picture Co.*, 828 F.2d 270, 272 (5th Cir. 1987) (district court sent false light and misappropriation claim to jury—court of appeal overturned false light verdict for insufficient proof of "publicity").

"free speech," and their defamation claim are sufficient to remedy the general falsity of the posting is supremely ridiculous given that (i) Defendants <u>refuse</u> to take the posting down even if *all or some of it is proven false*, and (ii) in so doing they profit handsomely from it while killing Plaintiffs' business.

Therefore, Defendants have no grounds for their argument.

### 2. The Supreme Court has Recognized that First Amendment Jurisprudence Needs to be Adapted to the Internet Age

Two additional considerations counsel in favor of denying Defendants' anemic Motion: (1) The Ripoff Report website and business model is nothing like general news media, or any other website; and (2) the Supreme Court has recognized that first amendment jurisprudence is ill-suited to apply generally to the Internet as it stands.

Defendants continue to labor under the self-delusion that they are akin to, say, the New York Times: a public watchdog, reporting news of national or general interest to the public, backed by journalistic ethics and integrity.

Defendants are none of these.

Try as they might to shoehorn their business model into a traditional media role, Defendants cannot escape the reality that their website has many unique features that make it materially different from traditional news outlets. Traditional news media does not typically do any of the following, which Defendants do with impunity:

- Solicit the "news" from sources anonymous to itself without some indicia of reliability;

- Conduct no fact-check on the factual bases of the "news" or "matters of public interest";

- Assist the anonymous poster in constructing hyperbolic titles and ensure that the name of the subject appears in the title for its prominent display on Google;

- Leave every posting-page, with its appurtenant title, displayed forever regardless of how old the story might be;

9

- Refuse to take down any posting or submit a retraction, even if it is demonstrably <u>false</u> or simply "old news";

- Put up a separate webpage devoted to convincing victims not to sue for defamation, and invite them to instead join the "Corporate Advocacy Program";

- In the Corporate Advocacy Program, offer to mitigate the posting's negative effect by demanding money from people whose businesses have already been decimated by the prominence and ubiquity of the Ripoff Report, with the return promise that the "this is the best advertising money can buy".

These differences make the Ripoff Report unlike any other website, and differentiate its operating and profit model from any other media or news outlet.

Moreover, the combination of the uniqueness of the Ripoff Report as a *website* in its ability to

- broadly solicit,
- automatically publish,
- widely disseminate, and
- permanently and constantly keep alive,

defamatory material, combined with the characteristics of the "unique and wholly new medium" of the Internet, calls for a closer examination of the optimum balance between protecting people like Plaintiffs and preserving the first amendment.

As the Supreme Court observed in *Reno v ACLU*,

> The Internet is a unique and wholly new medium of worldwide human communication. . . .
> [T]he content on the Internet is as diverse as human thought. We agree with [the district court's] conclusion that our cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium.[23]

---

[23] *Reno v. ACLU*, 521 U.S. 844, 850, 870 (1997).

10

Thus, Defendants' simplistic reliance on arcane first amendment precedent tied to traditional media is misplaced.  The law has to be analyzed and adapted to the specific facts at issue and in the widely varying contexts of the Internet.

### 3. The Cases Defendants Cite Do Not Help Them.

Defendants place understandable yet undue reliance on *Express One*,[24] for the proposition that using one's name to "smear" someone is not appropriating their name. But that is not what the court held.  The *Express One* court dismissed the claim *on summary judgment* because "Indeed, there was no <u>evidence</u> Steinbeck <u>intended to receive any benefit</u> at all as a result of his using the name."[25]  The Court did <u>not</u> hold that in smearing another's name, one could not thereby also misappropriate it.  That makes all the difference here.  Plaintiffs have alleged that Defendants expect to, and in fact do, receive benefits specifically from using Plaintiffs' names and smearing Plaintiffs.

Nor do Defendants get any mileage out of *Barnhardt* and *Stanley*.[26]  Both of these cases involved the use of photographs of nude women, one nameless, the others captioned, but all buried within widely circulated magazines.  The courts both held, as the *Express One* court held, that there was no evidence that the publishers expected to derive any unique benefit from the inclusion of those photographs—the publishers did not "capitalize" on the use of plaintiffs' names because in neither case did the plaintiffs' names have any special commercial appeal.

Here, the allegations are that Defendants solicited Plaintiffs' names for no other reason than to defame them and promote the specific web page, which itself is dedicated to smearing Plaintiffs.  Plaintiffs also allege that Defendants derive revenue directly from promoting the web page to visitors who further Defendants' profit generation.  Thus,

---

[24] *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 897 (Tex. App. 2001) (cited in Motion at 8).
[25] *Id.* at 900 (emphasis added).
[26] *Barnhardt v. Paisano Publications, LLC*, 457 F. Supp.2d 590 (D.Md. 2006) (cited at Motion at 8) and *Stanley v. General Media Comm., Inc*., 149 F.Supp.2d 701 (W.D. Ark. 2001) (cited at Motion at 9).

Defendants "capitalize on the likeness of [Plaintiffs] in order to" drive more traffic to the web page and to the website in general, and thereby derive more revenues. That is to say nothing of the ultimate profit motive: compelling Plaintiffs to join the Corporate Advocacy Program which is directly and exclusively associated with the web page about Plaintiffs. This also distinguishes the present case from *Chapman*,[27] which was not an Internet case; did not consider whether a defendant profiting directly from a defamatory article could be liable for misappropriation; and did <u>not</u> even hold that the defendants had not misappropriated plaintiff's name. The court considered whether, on the summary judgment record plaintiff was a public figure—a question decided on summary judgment[28]—and whether the article about him was therefore entitled to heightened to first amendment protection. That court did not consider the facts alleged in this case.

### 4. Defendants Cannot Prove As a Matter of Law that Speech will be Chilled by Allowing the Claim to Proceed

The critical policy issue under the Supreme Court's incidental use jurisprudence is the risk of chilling free speech.[29] Defendants have merely posited, without showing as a matter of law, that a successful misappropriation claim against Defendants would result in chilling free speech. On the other hand there is much to suggest otherwise: No other website or media outlet does what the Ripoff Report does as was shown above. It is an endemic feature of the Rip-off Report website that opposition to the postings be *silenced* unless the victim of the report pays enough money.

As the allegations show, the Rip-off Report website is one of the loudest voices on the Internet, depriving most the opportunity "for rebuttal" and making most, like

---

[27] *Chapman v Journal Concepts, Inc.*, 528 F.Supp.2d 1081 (D. Hawaii 2007) (Motion at 9-10).
[28] *Compare Chapman*, 528 F.Supp.2d at 1084 (evidence shows plaintiff surfer is public figure who makes story newsworthy) *with Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1002 (9th Cir. 2001) (evidence showed surfer not public figure, but had commercial value in promoting catalogue).
[29] *See Gertz*, 418 U.S. at 340; *Zacchini*, 433 U.S. at 578.

Plaintiffs "vulnerable to injury" from such uses.[30]  Adding insult to injury is the Ripoff Report's refusal to take down a false posting except upon payment of crippling sums of money.  Thus, this case is a far cry from those envisaged by the Supreme Court when formatively setting forth first amendment law.

Respectfully submitted this 3rd Day of April, 2009.

>                               PLAINTIFFS CERTAIN APPROVAL
>                               PROGRAMS, LLC & JACK
>                               STERNBERG
>                                  /s/  Mazin A. Sbaiti
>                               Kenton J. Hutcherson, *Pro Hac Vice*
>                               Mazin A. Sbaiti, *Pro Hac Vice*
>                               THE HUTCHERSON LAW FIRM
>                               3102 Oak Lawn Avenue, Suite 700
>                               Dallas, Texas 75219
>                               Tel: (214) 443-4200
>                               Fax: (214) 443-4210
>                               Email: kjh@hutchersonlaw.com
>                               Email: mas@hutchersonlaw.com
>                               ***Attorneys for Plaintiffs***

---

[30] *See Gertz*, 418 U.S. at 340 (holding that considerations relevant to balancing first amendment concerns with the protection of reputation and other such rights include the degree to which plaintiff is vulnerable in the marketplace, his opportunity for counterspeech and self-help).

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2009, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing to the following CM/ECF participant:

Maria Crimi Speth
Laura Rogal
Jaburg & Wilk
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
*Attorneys for Defendants Xcentric*
*Ventures, LLC, and Edward Magedson*

I have also caused to be delivered a courtesy copy of the foregoing to:

Honorable Neil V. Wake
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington St.
Phoenix, Arizona 85003

s/ Anne Sneed

/s/ Mazin A. Sbaiti
Mazin A. Sbaiti
Attorney For Plaintiffs Certain Approval Programs, LLC and Jack Sternberg