1 Maria Crimi Speth, #012574
David S. Gingras, #021097
2 Laura A. Rogal, #025159
**JABURG & WILK, P.C.**
3 3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
4 (602) 248-1000

5 Attorneys for Defendants

6

**IN THE UNITED STATES DISTRICT COURT**
7
**DISTRICT OF ARIZONA**
8

9

CERTAIN APPROVAL PROGRAMS,
10 L.L.C.; and JACK STERNBERG,          Case No:  CV08-1608-PHX-NVW

11          Plaintiffs,
                                       **MOTION FOR SUMMARY JUDGMENT**
12 v.

13 XCENTRIC VENTURES, L.L.C.;
EDWARD MAGEDSON; and JOHN or
14 JANE DOE,

15

Defendants.
16

17          Pursuant to Fed. R. Civ. P. 56, Defendants Xcentric Ventures, L.L.C. and Ed

18 Magedson hereby move this Court for an Order granting summary judgment as to all

19 claims in this matter on the basis that in light of the undisputed facts, Defendants are

20 entitled to judgment as a matter of law as to the issue of immunity pursuant to the

21 Communications Decency Act, 47 U.S.C. § 230(c)(1).

22          For the Court's information, the issue raised by this motion is intentionally narrow.

23 Specifically, the single question addressed is: <u>whether the undisputed facts establish that</u>

24 <u>Defendants are "responsible, in whole or in part" for the creation of any statements which</u>

25 <u>are allegedly defamatory as to Plaintiffs</u>?

26          Defendants contend the answer to this question is NO—it is undisputed that they

27 did not create and are not responsible for any defamatory statements about Mr. Sternberg.

28 As such, they are entitled to CDA immunity as a matter of law.

10297-33/DSG/DSG/714362_v3

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

1          As a general rule the CDA provides immunity to the operator of an interactive

2   website as long as one key condition is present—the content at issue must have been

3   created by a third party.  Based on this simple premise, cases interpreting the CDA have

4   created an extremely bright-line rule: as long as the elements of the CDA are met, liability

5   for online statements is limited to 1st party authors only.

6          Put another way, under the CDA, the author of a statement is liable for the

7   accuracy of his words, but others are not.  If the author is a user of a website, then the user

8   may be liable but the website is not.  By the same token, where the website itself creates

9   unlawful content, then the website is liable for the content it creates.   Under either

10  scenario, the simple effect of the CDA is to limit liability to first-party authors/creators,

11  whether that creator is a user of a website or whether the creator is the website itself.

12         This simple rule is extremely "bright-line" in the sense that no case has ever denied

13  CDA immunity to a website where the statements at issue were created by a third party.[1]

14  However, this is exactly what Plaintiffs seek—to blur the CDA's bright line in a manner

15  no court has ever allowed—imputing and transferring liability from a 1st party author

16  directly to a 3rd party website for statements made solely by the 1st party author:

17         Defendants anticipate that Plaintiffs will respond by suggesting that their position

18  is *not* novel.  Rather, Plaintiffs will argue that Defendants *are* first-party creators of some

19  of the statements at issue in this case, and therefore Plaintiffs are not trying to impute

20  liability to one party for statements created by a third party.

21         As explained below, this position mixes apples and oranges, and is without factual

22  support.  Indeed, the facts concerning the creation of the statements at issue in this case

23  are entirely undisputed, and these facts demonstrate that as a matter of law, Defendants

24  are entitled to immunity pursuant to the Communications Decency Act.

25

26  [1] Only one case has entertained the *possibility* that CDA immunity might not exist under these facts.  In *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003), a dispute arose as to whether a third party author intended his statements to be published online.  Recognizing that CDA immunity only extended to statements which the author intended to be published, the Ninth Circuit remanded for further findings as to the author's intent. *Cf. Barnes v. Yahoo!, Inc.*, __ F.3d ___, 2009 WL 1232367 (9th Cir. May 7, 2009) (CDA does not bar breach of contract claim based on promise to remove fake dating profile because claim does not require treatment of website as publisher of third-party content).

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

10297-33/DSG/DSG/714362_v3

1

## I.   BACKGROUND FACTS

2        As the Court knows, Defendants Xcentric and Ed Magedson run the website

3 www.RipoffReport.com which allows consumers to post complaints and to review

4 complaints written by other users.  *See* Defendants' Statement of Facts ("DSOF") ¶ 1.

5 Plaintiff Jack Sternberg is the principal of Certain Approval Programs, LLC.  DSOF ¶ 2.

6 From 2005 until 2008, Mr. Sternberg created and sold a program known as "Buyer's

7 First" which "teaches real estate investors how to develop leads of potential real estate

8 buyers before finding real estate to sell to them."  DSOF ¶ 3.   Although Mr. Sternberg has

9 for the most part retired, when the Buyer's First class was being offered from 2006–2008,

10 the cost was between $35,000–$60,000 for a 2–3 day seminar with some follow-up

11 tutoring.

12        This case arises from a single "report" posted on www.RipoffReport.com on

13 August 31, 2007 by an anonymous author identified as "John or Jane Doe".  The text of

14 this report is set forth in its entirety in ¶ 38 of Plaintiffs' First Amended Complaint

15 ("FAC").  DSOF ¶ 4.  Paraphrased simply, the report states that Mr. Sternberg cannot be

16 trusted, that his Buyer's First program is illegal and does not work, and that Mr. Sternberg

17 was arrested for fraud, among other things.  DSOF ¶ 5.  The report contains a title with a

18 similar message.  DSOF ¶ 6.

19        The Complaint does not allege that the substance of the report was created by

20 Defendants.  DSOF ¶ 7.  Rather, the Complaint alleges that the report was created solely

21 by John/Jane Doe without any input from Defendants.  DSOF ¶ 8.  Defendants agree that

22 this allegation is entirely correct; the report was created solely by a third party without any

23 input or encouragement from Defendants.

24        Likewise, the Complaint does not allege that the title of the report was created by

25 Defendants.  Rather, Paragraph 39 of the FAC alleges the author John/Jane Doe created

26 the report's title without any input or co-development by Defendants.  DSOF ¶ 9.  Again,

27 Defendants agree that this allegation is correct; every word in the title as quoted in FAC ¶

28 39 was created solely by a third party.

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

3

10297-33/DSG/DSG/714362_v3

1    Thus far, it is factually undisputed that every word which forms the basis for

2 Plaintiffs' claims was created solely by John/Jane Doe without any input or

3 encouragement from Defendants.  The next question is obvious: if Defendants did not

4 create the report or the title, *what defamatory information did they create*?

5    The answer is found in Paragraph 42 of the Complaint which alleges that

6 Defendants "added" the words "<u>Rip-off Report:</u>" to the beginning of the title of John

7 Doe's report.  DSOF ¶ 10.  The exact location of this "added" content is shown in the

8 circles below.

9

10

**Text**

11

**"Added"**

12

**By**

13

14

**Defendants**



15

16

17

18

19

20

21

22    Based on these facts (which Defendants agree are all undisputed), Plaintiffs seek to

23 hold Defendants responsible for *every word* of the *entire* posting, even the portions which

24 Mr. Sternberg admits were created solely by a third party.  This argument is creative, but

25 it is directly contrary to well-settled law.  Courts have routinely held that a website can be

26 both a creator of some content and a republisher of other content, but liability cannot be

27 imposed on the site for material which the site itself did not create.   Summary judgment

28 should therefore be entered in favor of Defendants as to all claims in this case.

4

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

## II.   ARGUMENT

Before tackling specific points, the Court should note that this motion relies on a crucial distinction—the distinction between text created by Defendants and text created by someone else; e.g., a third party user of the Ripoff Report website.  As a matter of course, and with one general exception,[2] Defendants agree that the CDA does not apply to text which <u>they</u> themselves created.  This point is beyond dispute; "Essentially, the CDA protects website operators from liability as publishers, <u>but not from liability as authors</u>." *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 2007 WL 2949002, \*3 (D.Ariz. 2007) (emphasis added).

On the other hand, if defamatory text was created by a third party without significant input or substantive alteration from Defendants, the CDA prohibits transferring or imputing liability to Defendants for another person's statements; "This is precisely the kind of situation for which section 230 was designed to provide immunity." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008).  This distinction is pivotal because, "Under the CDA, website operators are only considered 'information content providers,' <u>for the information at issue that the operators are responsible for creating or developing</u>." *GW Equity*, 2009 WL 62173, \* 7 (emphasis

---

[2] The exception is as follows: users of the Ripoff Report website may choose to place their report into a category such as "Con Artists" or something less controversial.  Although the actual words for each category were created by Defendants, the decision to select those words for a particular report is a choice made by the author, not by Defendants.  As a matter of law, Defendants are still entitled to CDA protection as to user-selected category choices even if the words were initially created by Defendants; "This minor and passive participation in the development of content will not defeat CDA immunity, which can even withstand more active participation." *Global Royalties*, 2007 WL 2949002 at \*3 (citing *Batzel v. Smith*, 333 F.3d 1018, 1031 note 19 (9th Cir. 2003)); *see also Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095, \*10 (M.D.Fla. 2008) (noting, "the mere fact that Xcentric provides categories from which a poster must make a selection in order to submit a report on the ROR website is not sufficient to treat Defendants as information content providers of the reports … that contain the "con artists", "corrupt companies", and "false TV advertisements" categories."); *see also GW Equity, LLC v. Xcentric Ventures, LLC*, 2009 WL 62173, \*5 (N.D.Tex. 2009) (concluding, "Defendants' provision of a broad choice of categories did not create or develop the alleged harmful conduct here.")

5

10297-33/DSG/DSG/714362_v3

1    added) (citing *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003)).

2    Put simply, if a website creates 1% of a posting, the site is liable only as to *that* 1% it

3    created.   If the other 99% was created solely by a third party, the website is not

4    responsible for that part of the text.  *See Gentry v. eBay, Inc*., 99 Cal.App.4th 816, 833

5    note 11, 121 Cal.Rptr.2d 703, 717 note 11 (Cal.App.4th 2002) (explaining, "the fact

6    appellants allege eBay is an information content provider is irrelevant if eBay did not

7    itself create or develop the content for which appellants seek to hold it liable.  It is not

8    inconsistent for eBay to be an interactive service provider and also an information content

9    provider; the categories are not mutually exclusive. The critical issue is whether eBay

10   acted as an information content provider with respect to the information that appellants

11   claim is false or misleading.") (emphasis added).

12          As these cases hold, the standard for CDA immunity is very clear and very

13   simple—in order to overcome the CDA, Mr. Sternberg must show that Defendants are

14   responsible, in whole or in part, for creating false statements, and that *those statements* are

15   the ones for which Mr. Sternberg seeks to hold Defendants liable.   This showing cannot

16   be made here for two simple reasons:

17          1.)    The undisputed facts show that Defendants did not create either the report or

18                 the title at issue; this information was provided solely by a third party.  As

19                 such, the original author may be liable to Mr. Sternberg for his/her

20                 statements, but the CDA fully applies to protect Defendants from liability as

21                 to these statements; and

22          2.)    To the extent Defendants "created" any content such as the words "Rip-off

23                 Report:" these words are non-defamatory as a matter of law and did not

24                 change the meaning of the original author's statements.  As such, liability

25                 cannot be based on these statements, and there is no basis to impute liability

26                 on Defendants for the author's own statements.

27          These two principles are based on facts which are entirely undisputed.  As such,

28   summary judgment should be entered in favor of Defendants.

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

6

1

**a. It Is Undisputed That Defendants Did Not Create Any Of The Text Of The Posting At Issue**

2

3    As described in Paragraph 38 of the Complaint, on August 31, 2007 a third party

4    author identified as "John or Jane Doe" logged into the Ripoff Report website and posted

5    a report about Plaintiffs.   The full text of this report is quoted *verbatim* in the Complaint

6    and the body of the report is shown here:

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

10297-33/DSG/DSG/714362_v3

1    Not surprisingly, the report includes some content from the author and some

2  generic content created by Defendants.  SOF ¶ 11.  When the user submitted his/her

3  posting to the site, the author's content was combined with the generic material to create

4  the final standardized page common to every report on the website.  SOF ¶ 12.

5    **Generic Website Content**            **Content from 3ʳᵈ Party Author**



**Final Combined Posting**



JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

10297-33/DSG/DSG/714362_v3

1    Of course, as noted above, the fact that the posting at issue contains a combination

2    of some text from the third party author and some text from Defendants does not make

3    Defendants jointly liable for every word in the posting.  This is not how the CDA works.

4    Rather, "Under the CDA, website operators are only considered 'information content

5    providers,' for the information at issue that the operators are responsible for creating or

6    developing." *GW Equity*, 2009 WL 62173, * 7 (emphasis added)

7    Here, the undisputed facts establish all three elements of CDA immunity as to the

8    text comprising the body of the posting identified in Paragraph of the Complaint.  *See*

9    *Schneider v. Amazon.com, Inc.*, 31 P.3d 37, 39 (Wash.App. 2001) (observing CDA's three

10   elements are: "[1] the defendant must be a provider or user of an interactive computer

11   service; [2] the asserted claims must treat the defendant as a publisher or speaker of

12   information; and [3] the information must be provided by another information content

13   provider.")

14   First, it is undisputed that Defendants are the providers of an interactive computer

15   service; to wit, www.RipoffReport.com.  *See Global Royalties, Ltd. v. Xcentric Ventures,*

16   *LLC*, 544 F.Supp.2d 929 (D.Ariz. 2008) (finding Defendants entitled to CDA immunity as

17   providers/operators of an interactive computer service).

18   Second, it is undisputed that all claims in the First Amended Complaint treat

19   Defendants as publishers or speakers of information.  *See* SOF ¶ 13.

20   Third, it is undisputed that Defendants did not create the text identified in ¶ 38 of

21   the Complaint.  This information was provided solely by another information content

22   provider—John/Jane Doe.  Mr. Sternberg does not allege that Defendants played any role

23   in the creation of this content.

24   Because all three CDA elements are present with respect to the body of the report

25   at issue, Defendants are entitled to immunity as to that material and summary judgment is

26   therefore proper to that extent, excusing Defendants from having to defend the accuracy

27   of this material which they did not create; "Without reviewing every essay, [website

28   operators] would have no way to distinguish unlawful discriminatory preferences from

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

1    perfectly legitimate statements. … This is precisely the kind of situation for which section

2    230 was designed to provide immunity." *Roommates.com*, 521 F.3d at 1174.

3         Based on these undisputed facts, Defendants are entitled to summary judgment in

4    their favor as to any/all statements contained in the body of the posting at issue and the

5    title as described in Paragraph 39 of the Complaint.  There is no dispute that Defendants

6    did not create this information, and as such, the CDA precludes Plaintiffs from imposing

7    liability upon Defendants for the accuracy of these statements.

8              **b.  None of Defendants' Editorial Actions Abrogate CDA Immunity**

9         As explained above, it is undisputed that Defendants did *not* write the report and

10   did *not* write the title.  Despite this, it is expected that Plaintiffs will argue that liability

11   may pass from the author to Defendants by virtue of editorial contributions which make

12   Defendants liable as joint creators of the posting at issue.

13        Given the uncontested facts shown above, the dispositive question is purely a legal

14   one—are any of Defendants' actions sufficient to treat Defendants as "responsible, in

15   whole or in part" for the creation of material which defames Plaintiffs?   As explained

16   below, the answer is simple: NO, none of Defendants actions fall outside the permissible

17   editorial actions allowed by the CDA.

18               **1.  Including "<u>Rip-off Report:</u>" In A Title Of A Posting On**
19                   **www.RipoffReport.com Does Not Materially Alter The**
                    **Meaning Of The 3rd Party-Generated Text**
20

21        Over the past several months, Plaintiffs' theory of this case has become very

22   apparent.  The theory works like this.  Knowing that they cannot prove Defendants wrote

23   any of the substantive text of the report or the report's title (because they did not),

24   Plaintiffs contend that the CDA does not apply because Defendants added the words "Rip-

25   off Report:" to one version of the report title (as shown above) thereby effectively

26   "contributing to" the third-party author's text, causing Defendants to become jointly

27   responsible for the *entire posting*, even as to 3rd party material which was not altered or

28   modified by Defendants in any way.

10297-33/DSG/DSG/714362_v3

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

1    As noted above, no court has ever accepted such a radical theory.  As a general

2  rule, merely adding or subtracting words to/from user-generated text will not result in a

3  loss of CDA immunity; "A website operator who edits user-created content-such as by

4  correcting spelling, removing obscenity or trimming for length-retains his immunity for

5  any illegality in the user-created content, provided that the edits are unrelated to the

6  illegality."  *Roommates.com*, 521 F.3d at 1169; *Global Royalties*, 544 F.Supp.2d at 932

7  ("the CDA is a complete bar to suit against a website operator for its 'exercise of a

8  publisher's traditional editorial functions-such as deciding whether to publish, withdraw,

9  postpone *or alter content*.'") (emphasis added) (quoting *Batzel*, 333 F.3d at 1035).  In

10  other words, merely editing third-party content will not destroy a website's immunity.

11    By the same token, CDA immunity will always be lost if the website operator edits

12  or alters third-party text in a manner that <u>materially changes</u> the *meaning* of the original

13  author's message:

> 14    [A] website operator who edits in a manner that contributes to the alleged
> 15  illegality–such as by removing the word "not" from a user's message
>     reading "[Name] did *not* steal the artwork" in order to transform an
> 16  innocent message into a libelous one–is directly involved in the alleged
>     illegality and thus not immune.
> 17

18  *Roommates.com*, 521 F.3d at 1169 (brackets and emphasis in original).  Clearly, removing

19  the word "not" from a sentence drastically alters the meaning of the message and exposes

20  the editor to liability as the developer of the statement.  Defendants do not dispute that

21  rule.  But this rule cannot be extended to impose liability here based on the inclusion of

22  the words "Rip-off Report:" in part of a report's title for at least two reasons.

23    First, Plaintiffs do not dispute that the anonymous author wrote every word of the

24  following title: "Jack Sternberg Ken Preuss Buyers FirstJack Sternberg Ken Preuss Buyers

25  First <u>Rip-Off</u> King on an Illegal Program to Scam Investors Metarie Louisiana".    As the

26  Court can see, the words "Rip-Off" were part of the text submitted by the original author.

27  As such, adding the trademarked phrase "Rip-off Report" to the front of the title did not

28  change its meaning in any way because the term "Rip-Off" was already there.

1    But even if the words "rip-off" were not included by the original author, this

2    editorial act of simply identifying the name of the website where the posting is located

3    does not materially alter any part of the original title's message or meaning.   In other

4    words, if the words "Rip-off Report:" were *removed*, the message of the original title and

5    report would remain the same.  Mr. Sternberg conceded this point in his deposition:

6        Q:    [W]ould you be satisfied in our case if those words were removed from this

7               report "Rip-Off Report:" those words are taken out, would that eliminate

8               any concerns that you have about this posting?

9        A.    No.

10       Q.    Why not?

11

12       A.    Because it is, there is all kinds of stuff, there is all kinds of stuff wrong with
           it.  There is [sic] all kinds of stuff.

13   SOF ¶ 14.  Here, it is obvious that the words "Rip-off Report:" do not alter the meaning of

14   the original author's words because <u>the original, unedited title already contained the</u>

15   <u>words "Rip-Off"</u>.  In addition, the term "Rip-off Report" is simply an accurate reflection

16   of the <u>location</u> of the report; it is, in fact, posted on <u>www.RipoffReport.com</u>.   The

17   presence of this text does not change the meaning of the author's words.

18   As the Court is aware, three other federal courts have considered cases involving

19   the Ripoff Report website and all three reached the same conclusion—Defendants'

20   operation of the website is fully protected by the CDA.  *See GW Equity, LLC v. Xcentric*

21   *Ventures, LLC*, 2009 WL 62173 (N.D. Tex. Jan. 9, 2009) (granting summary judgment in

22   favor of Xcentric under the CDA); *Whitney Information Network, Inc. v. Xcentric*

23   *Ventures*, LLC, 2008 WL 450095 (M.D.Fla. 2008) (granting summary judgment in favor

24   of Xcentric under the CDA); *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544

25   F.Supp.2d 929 (D.Ariz. 2008) (granting Rule 12(b)(6) dismissal in favor of Xcentric

26   under the CDA).   Given that each of these cases involved the exact same website and

27   reports which (as here) also included "Rip-off Report:" in the same locations as in this

28   case, there is simply no basis to reach a different result here.

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

12

1    Speaking pragmatically, if this case presented a "close call" (which it does not),

2  Defendants note that the Ninth Circuit has explained that difficult cases should be

3  resolved in favor of immunity under the CDA:

> We must keep firmly in mind that this is an immunity statute we are
> expounding, a provision enacted to protect websites against the evil of
> liability for failure to remove offensive content. <u>Websites are complicated
> enterprises, and there will always be close cases where a clever lawyer
> could argue that something the website operator did encouraged the
> illegality. Such close cases, we believe, must be resolved in favor of
> immunity, lest we cut the heart out of section 230 by forcing websites to
> face death by ten thousand duck-bites, fighting off claims that they
> promoted or encouraged-or at least tacitly assented to-the illegality of third
> parties.</u> Where it is very clear that the website directly participates in
> developing the alleged illegality-as it is clear here with respect to
> Roommate's questions, answers and the resulting profile pages-immunity
> will be lost. But in cases of enhancement by implication or development by
> inference-such as with respect to the "Additional Comments" here-section
> 230 must be interpreted to protect websites not merely from ultimate
> liability, but from having to fight costly and protracted legal battles.

15  *Roommates.com*, 521 F.3d at 1174–74.  Judge Kosinki's cautionary remarks are especially

16  apropos here.  Plaintiffs' clever arguments notwithstanding, the statements criticizing Mr.

17  Sternberg were not created by Defendants.  These words were created by a third party and

18  were posted without modification.  As such, Defendants are protected under the CDA.

19                    **2.  Including "<u>Rip-Off Report</u>" In A Title Is Not Defamatory**

20    Although the Court need not even reach the issue, Defendants note that to the

21  extent the words "Rip-off Report" appear in any part of the posting about Mr. Sternberg,

22  the CDA may not apply *as to those words* (because Defendants created them), but this

23  does not mean Mr. Sternberg's defamation claim will survive summary judgment for at

24  least two reasons.

25    First, as a matter of law, as long as the underlying facts are disclosed, the phrase

26  "rip-off" is a non-actionable expression of opinion which cannot support a defamation

27  claim.  *See* Robert D. Sack, *Sack on Defamation*, § 4.3.5 at 4–54, 4–56 (2008 ed.) (citing

28  *Phantom Touring, Inc. v. Affiliated Pub.*, 953 F.2d 724 (1st Cir. 1992) for premise that

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

13

article referring to an obscure production of *Phantom of the Opera* as a "fake", "<u>rip-off</u>" and a "fraud" was non-actionable opinion).

An excellent example of this principle is found in *Beilenson v. Superior Court*, 44 Cal.App.4th 944, 52 Cal.Rptr.2d 357 (Cal.App.2nd Dist. 1996).   *Beilenson* involved a heated political rivalry in which a candidate for U.S. Congress (Anthony Beilenson) published a campaign flyer attacking his opponent with the following statement: "<u>Rich Sybert Ripped Off California Taxpayers</u>".   *Beilenson*, 44 Cal.App.4th at 947 (emphasis added).

After Beilenson won the election, Sybert sued, claiming the use of the term "Ripped Off" was defamatory.  The California Court of Appeals <u>disagreed</u>, "This colorful epithet [rip-off], when taken in context with the other information contained in the mailer, was rhetorical hyperbole that is common in political debate.  As such, <u>the term 'rip-off' was not defamatory</u>."   *Beilenson*, 44 Cal.App.4th at 951–52 (emphasis added) (citing *Greenbelt Pub. Assn. v. Bresler*, 398 U.S. 6, 14, 26 L.Ed.2d 6, 15, 90 S.Ct. 1537 (1970).

Another court reached the same result in *Jaillette v. Georgia Television Co.*, 238 Ga.App. 885, 520 S.E.2d 721 (Ga.App. 1999).   *Jaillette* involved a local television news broadcast about an air conditioning repairman who tried to charge customers $1,200 for the unnecessary replacement of a broken air conditioning unit.  The news story included statements from both the reporter and the unhappy customers concluding that the repairman was attempting to "rip off" his customers.  *See Jaillette*, 238 Ga.App. at 887, 520 S.E.2d at 724.

The repairman sued for defamation and the defendants moved for summary judgment on various grounds, including on the basis that the use of the term "ripoff" was "a mere statement of opinion or rhetorical hyperbole, and thus cannot form the basis for a defamation claim."  *Id.* at 890, 520 S.E.2d at 725.   The trial court agreed and granted summary judgment in favor of the defendants.

On appeal, the Georgia Court of Appeals affirmed, finding that the term "ripoff" was not defamatory as long as the facts underlying that opinion were disclosed.  *See*

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

14

1   *Jaillette*, 238 Ga.App. at 891, 520 S.E.2d at 726.  Numerous courts have reached the exact

2   same result in various types of disputes.  *See Rizzuto v. Nexxus Products Co.*, 641 F.Supp.

3   473, 481 (S.D.N.Y. 1986) (claim in advertisement that competing seller of haircare

4   products was "trying to RIP YOU OFF" was non-defamatory expression of opinion); *Piro*

5   *v. Senior Action in a Gay Environment, Inc.*, 2006 WL 2611789, *1 (N.Y.Sup. 2006)

6   (granting summary judgment in favor of defendant based on finding that, "the statement

7   that plaintiff had 'ripped someone off' is also nonactionable opinion."); *Telephone*

8   *Systems Int'l, Inc. v. Cecil*, 2003 WL 22232908 (S.D.N.Y. 2003) ("The defamatory

9   statements, as alleged, are that Bayat said that Bentham and/or Cecil were 'ripping him

10   off.' These statements are figurative and hyperbolic, and are not capable of being

11   disproved.   Consequently, these statements are merely expressions of opinion. The

12   movants' motion to dismiss the defamation counterclaim is therefore granted.") (emphasis

13   added).

14   The same logic applies here.  The term "rip-off" is a common epithet conveying

15   the speaker's subjective opinion which cannot be conclusively proven true or false.   For

16   instance, in 2004 the price of gasoline exceeded $2/gallon for the first time, causing

17   widespread public outrage over that egregious "rip-off".[3]   Now, five years later,

18   consumers are rejoicing at paying the same price.  Obviously, whether or not $2/gal.

19   gasoline is a "rip-off" is a matter of personal opinion which cannot be proven true or false.

20   For the same reason, the use of the phrase "rip-off" or "Ripoff Report" is not an

21   expression of any fact which can be proven true or false.  Indeed, viewed in context, no

22   reasonable reader could conclude that the use of the term "Ripoff" implies the existence of

23   other undisclosed facts beyond the fact that a report has been posted on the website

24   www.RipoffReport.com.  This is particularly true given that the front page of the website

25   clearly explains that the term "ripoff" refers to a consumer's opinion which should NOT

26   be relied upon as fact:

27

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

28

---

[3] http://www.democraticunderground.com/discuss/duboard.php?az=view_all&address=104x1575143

15

10297-33/DSG/DSG/714362_v3

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

> Consumers, just because a company or individual is reported on Rip-off Report does not necessarily mean you should not do business with them.  In many cases, it's just the opposite.  Just because a company is posted on Rip-off Report does not mean they are "bad". <u>At some point in time, everyone has felt like they've been ripped off, when that may not have been the case.</u>  Not everything published on the Internet, or local newspapers, or local TV news is always true. Many stories, no matter where you see them, may have a bias slant. Being short on space or only having less than 2 minutes to do a story where important facts are left out can change the entire story.  <u>Rip-off Report feels consumers reading the unedited experiences of other consumers, without editorial involvement, are getting the best consumer opinion/news available</u>.  Our detractors would like to tell you differently. Savvy consumers need to take in all the information they can find and use it as an advantage.  Consumers who investigate and obtain information about a company from a number of sources will be able to make more educated decisions, because they know what to watch for.  By reading Rip-off Report, or any other publication containing information about businesses, you, the consumer, now know more about that business than its competitors.  More than likely the competitor has the same issues. Let the reported business know you've read complaints about them, that you would like to do business with them, and get affirmation from the company that if you do business with them, they will do right by you. Let them know that if they treat you right, you will log on to Rip-off Report and tell the world what a great experience you've had. All companies make mistakes. It is the ones that learn from their mistakes that will benefit the consumers the most. *"An educated consumer is our best reader"*

18
SOF ¶ 19 (emphasis added).

19   Under these circumstances, no reasonable reader would believe that the application

20  of the term "Ripoff Report" implies the existence of any facts beyond those contained in

21  the specific report(s) appearing on the site.  Ripoff Report clearly discloses to readers that

22  reports on the site are the opinions of the author, are *not* verified for accuracy, and should

23  *not* discourage the reader from patronizing the reported business.  As such, whether it may

24  have a negative connotation, the term "ripoff" is simply an epithet and an expression of

25  opinion which is not actionable as a matter of law.

26          **c.  The Corporate Advocacy Program Is Irrelevant**

27   In a final effort to inflame and distract the Court, it is expected that Mr. Sternberg

28  will argue that Defendants' Corporate Advocacy Program somehow results in a loss of

16

1   CDA protection.  This position is factually groundless because Mr. Sternberg was never,

2   at any time, solicited by Defendants to become a member of the program.  SOF ¶ 17.  Mr.

3   Sternberg was never asked to pay any money to Defendants, nor has he done so.  SOF ¶

4   18.  In fact, when *Mr. Sternberg* approached Defendants and inquired about joining the

5   Corporate Advocacy Program, Defendants declined, and explained that he could post a

6   rebuttal free of charge. SOF ¶ 19.  To be blunt—the Corporate Advocacy Program has

7   nothing whatsoever to do with this case.

8          However, even if it did, this is legally irrelevant to the issue of whether the CDA

9   protects Defendants.  That exact issued was considered and rejected by Judge Martone in

10  *Global Royalties*, 544 F.Supp.2d at 932–33 (finding "there is no authority for the

11  proposition that [the Corporate Advocacy Program] makes the website operator

12  responsible, in whole or in part, for the "creation or development" of every post on the

13  site."); *see also GW Equity*,  2009 WL 62173, *13 (finding, "Like other courts to consider

14  this issue, this Court does not find the 'Corporate Advocacy Program' prohibits

15  Defendants from immunity under the CDA."); *see also Whitney Info. Network Inc. v.*

16  *Xcentric Ventures,* LLC, 2008 WL 450095 at *6-12 (M.D.Fla. Feb.15, 2008) (finding

17  CDA immunity even though Court was aware of the Corporate Advocacy Program).

18      **III.    CONCLUSION**

19         For the above reasons, Defendants move the Court for an order granting them

20  summary judgment as to all causes of action pursuant to Fed. R. Civ. P. 56.

21         DATED May 20, 2009.

22

23                                                        **JABURG & WILK, P.C.**

24                                                        /s/ David S. Gingras
                                                         Maria Crimi Speth
25                                                       David S. Gingras
                                                         Laura Rogal
26                                                       Attorneys for Defendants

27

28

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

17

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2009 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Kenton J Hutcherson
Mazin A. Sbaiti
(Admitted *Pro Hac Vice*)
Hutcherson Sbaiti LLP
3102 Oak Lawn Avenue, Suite 700
Dallas, TX 75219
Email: kjh@hutchersonlaw.com
mas@hutchersonlaw.com

Michael Kent Dana
Dana Law LLC
506 East Portland Street
Phoenix, AZ 85006
Email:  mdana@danalaw.net
Attorneys for Plaintiffs


With a COPY of the foregoing delivered to:

Honorable Neil Wake
United States District Court
District of Arizona


s/Debra Gower

18

10297-33/DSG/DSG/714362_v3